# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANDRES GOMEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:17-cv-22949-KMM |
| v. | ) |
| | ) Hon. Judge K. Michael Moore |
| LUBY'S FUDDRUCKERS | ) |
| RESTAURANTS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## LUBY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) WITH INCORPORATED MEMORANDUM OF LAW

        Courtney C. Booth, Esq. (*pro hac vice* to be filed)
        cbooth@beneschlaw.com
        **BENESCH, FRIEDLANDER,**
        **COPLAN & ARONOFF LLP**
        333 West Wacker Drive, Suite 1900
        Chicago, Illinois  60606
        Telephone:  (312) 212-4949
        Facsimile:  (312) 767-9192

        Mark D. Schellhase, Esq. (Florida Bar No. 57103)
        mark.schellhase@gray-robinson.com
        **GRAY ROBINSON, P.A.**
        225 N.E. Mizner Blvd., Suite 500
        Boca Raton, Florida 33432
        Telephone:  (561) 368-3808
        Fax:  (561) 368-4008

        *Counsel for Luby's Fuddruckers Restaurants, LLC*

Luby's Fuddruckers Restaurants, LLC ("Luby's"), by and through undersigned counsel, respectfully submits this Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b), with Incorporated Memorandum of Law.

## PRELIMINARY STATEMENT

Plaintiff Andres Gomez has a niche business of bringing actions against all manners of companies under the American with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"), alleging purported website inaccessibility for visually impaired persons. Plaintiff has in fact filed more than *300* of these cases over the last few years, sometimes filing two or three per day. Plaintiff's complaints follow a uniform formula: (i) allege boilerplate "barriers" to accessibility and (ii) conclude that the company has not provided visually impaired persons "full and equal access" to the website. On the basis of these conclusory allegations, Plaintiff alleges a single claim against Luby's for violation of the ADA. Here, Plaintiff also adds, for good measure, that Luby's has committed trespass by installing unknown and unspecified software on his computer. Neither of Plaintiff's claims satisfies basic pleading standards (or common sense).

Plaintiff faces a fundamental, dispositive issue with his ADA claim. In order to allege a violation of the ADA as it pertains to a website, "Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's ***retail location***." *Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-cv-23801, 2017 WL 1957182, at *4 (S.D. Fla. Feb. 2, 2017) (emphasis added). Here, while Plaintiff alleges that there is a website and supposed barriers, Plaintiff fails to explain what purported barriers he personally faced and how those barriers (*i.e.*, "a link contains no text") impeded his use and enjoyment of a physical location. Just as in *Bang & Olufsen*—yet another one of Plaintiff's more than 300 filings—the failure to tie the barriers to the impediment of his use of a physical location dooms his case.

Plaintiff's trespass claim likewise fails. <u>First</u>, given that Plaintiff fails to allege an ADA claim, this Court should decline to exercise supplemental jurisdiction over Plaintiff's common law trespass claim. And <u>second</u>, Plaintiff's own allegations establish that there was no trespass. Plaintiff contends that by virtue of having visited www.fuddruckers.com, certain software was placed on his computer. Plaintiff's very own allegations, however, establish that no such thing could have happened. To support his claim, Plaintiff alleges simply that Luby's may collect certain information from website visitors who (i) log into an application or (ii) complete a sign up form. Plaintiff never alleges that he did either. In any event the collection of information is by no stretch of the imagination equivalent to the installation of software, let alone an intentional interference with Plaintiff's computer.

At the end of the day, Plaintiff cannot simply engage in a rote listing of website barriers and claim discrimination. Neither can Plaintiff invent a trespass claim out of the hypothetical installation of software. Should the Court hesitate to dismiss Plaintiff's claims, however, it should dismiss the action pursuant to the primary jurisdiction doctrine to allow the Department of Justice ("DOJ") to implement binding nationwide standards for website accessibility.[1]

## BACKGROUND

**I.     THE ADA AND WEBSITE ACCESSIBILITY.**

The ADA "is intended to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999) (internal quotations and citation omitted). Title III "generally

---

[1] Plaintiff has simultaneously filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2). As noted therein, pursuant to the Florida Supreme Court, this Court must first determine whether Plaintiff has stated a claim prior to evaluating whether this Court has personal jurisdiction. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (same).

2

provides that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *U.S. v. AMC Entm't, Inc.*, 549 F.3d 760, 763 (9th Cir. 2008) (quoting 42 U.S.C. § 12182(a)).

In the Eleventh Circuit, tangential services, like websites, may be "places of public accommodation" subject to Title III of the ADA if there is a connection—or "nexus"—between the service complained of and the brick-and-mortar locations. *See, e.g., Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1284 n.8 (11th Cir. 2002) (requiring "a nexus between the challenged service and the premises of the public accommodation"). Though the Eleventh Circuit has not specifically addressed websites, "the majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space." *Bang & Olufsen*, 2017 WL 1957182, at *3 (relying on *Rendon*, 294 F.3d at 1283).

The DOJ has, since at least 2010, been "considering revising the regulations implementing Title III of the [ADA] in order to establish requirements for making the goods, services, facilities, privileges, accommodations, or advantages offered by public accommodations via the Internet . . . accessible to individuals with disabilities." *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations ("NOPR")*, 75 Fed. Reg. 43450-01, 2010 WL 2888003 (July 26, 2010)). The DOJ acknowledged that they had been urged to provide guidance for years, but that despite those persistent requests "a clear requirement that provides the disabled community consistent access to Web sites and covered entities clear guidance on what is required under the ADA does not exist." *NOPR*, 75 Fed. Reg. at 43464. To date, the DOJ has yet to set forth any concrete guidance or regulations relating to website accessibility.

3

## II.     LUBY'S WEBSITE AND PLAINTIFF'S COMPLAINT.

Defendant Luby's franchises Fuddruckers restaurants. (DE ¶¶ 5, 17.) Luby's also maintains a website—www.fuddruckers.com (the "Website"). (*Id.* ¶ 24.) Plaintiff alleges that the:

> Website is an electronic storefront and business permits [sic] the public to obtain information on Fuddruckers food, information on store policies, and other information Defendant is interested in communicating to its customers and the public. From the Website, the public can inquire about Fuddruckers locations that offer event catering. From the Website the public can also sign up for "Fudds Club," thereby receiving online notices of Fuddruckers special events promotions and offers.

(*Id.* ¶ 25.) Plaintiff also alleges that the Website sells gift cards and allows the public to "view and purchase Fuddruckers food and have the Fuddruckers food delivered to one's home or available for pick up in a nearby Fuddruckers restaurant." (*Id.* ¶ 28.)

Plaintiff alleges he is legally blind. (*Id.* ¶ 14.) Plaintiff further alleges that the "Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website." (*Id.* ¶ 35.) After twenty-two pages of boilerplate pleadings, Plaintiff alleges the following "programming errors" on Luby's Website:

> 1) The language of the document is not identified.
> 2) Image alternative text is not present, and
> 3) A form control does not have a corresponding label.

(*Id.* ¶ 98.) Plaintiff also alleges the following "programming alert errors" on Luby's Website:

> 1) Alternative text is likely insufficient or contains extraneous information
> 2) An event handler is present that may not be accessible,
> 3) A heading level is skipped,
> 4) Flash content is present,
> 5) Adjacent links go to the same URL,
> 6) A link contains no text, and
> 7) Alternative text is likely insufficient or contains extraneous information.

(*Id.* ¶ 99, error in original.)[2]

---

[2]     As detailed below, these are the same barriers that Plaintiff's counsel alleges in all of his complaints. *See, e.g.*, *Open Access v. Grubhub*, No. 17-cv-23117, DE 1 ¶¶ 101, 102 (S.D. Fla.).

4

Though Plaintiff contends that these are just a "sampling" of the barriers at issue, Plaintiff does not allege the existence of any others. While Plaintiff lists these so-called errors, he fails to explain where those errors were present and what (if anything) they prevented him from doing, let alone as it pertains to a physical Fuddruckers location. In particular, Plaintiff never alleges that he tried to buy a gift card, sign up for an email list, order food online, search for restaurant locations, or place a catering order, let alone how the Website supposedly prevented him from doing so. (*See generally* DE 1.) Instead, he merely determines that the Website is "an integral part of Defendant's restaurants," lists typical errors that could make a website inaccessible (again, while failing to explain where they appeared), and jumps to the conclusion that individuals hypothetically could not use the Website as a result. (*See id.* ¶¶ 26, 83, 97-99, 101.)

In addition to arguing that the Website violates the ADA, Plaintiff alleges that Luby's trespassed on his computer by "plac[ing] forms of software" on it. (*Id.* ¶¶ 64, 66-68, 108-12.) In doing so, Plaintiff includes a brief sampling of Luby's privacy policy, which pertains to the collection of information *only where* a consumer provides certain information through a signup form. (*See id.* ¶ 113.) Plaintiff does not contend, in actuality, that any software was installed on his computer, let alone that he ever filled out a signup form. Plaintiff also does not contend that access barriers prevented his access of Luby's privacy policy.

Plaintiff filed this lawsuit on August 4, 2017, alleging claims for violation of the ADA and trespass. Plaintiff seeks declaratory judgment, a wide-ranging injunctive order (including, among other things, that Luby's modify the Website "to remove barriers," to contract with independent ADA experts, to provide ongoing web accessibility support, and to evaluate and establish certain policies), damages, and attorneys' fees and expenses. (*See id.*, Demand for Relief.)

**DISCUSSION**

A complaint may only survive a motion to dismiss if it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege facts that raise the right to relief above the speculative level, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, dismissal is proper when a complaint provides "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678; *see also J.A.M. v. Nova Southeastern Univ., Inc.*, 646 Fed. Appx. 921, 924 (11th Cir. 2016) ("Conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal.") (internal quotations and citation omitted). Crucially, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678 (internal quotations and citation omitted).

**I.     PLAINTIFF FAILS TO ALLEGE A NEXUS BETWEEN HIS ROTE ACCESSIBILITY BARRIERS AND THE LUBY'S WEBSITE.**

It is axiomatic that to allege an ADA claim, a plaintiff must allege that he "was denied public accommodations by the defendant because of [his] disability." *Bang & Olufsen*, 2017 WL 1957182, at *2. In order to state an ADA claim relating to a website, however, Plaintiff must also allege that the "website's inaccessibility impedes [Plaintiff's] 'access to a specific, physical, concrete space[,]' and establishes some nexus between the website and the physical place of public accommodation." *Id.* at *3; *see also Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) ("Having failed to establish a nexus between southwest.com and a physical, concrete place of public accommodation, Plaintiffs have failed to state a claim upon which relief can be granted under Title III of the ADA."); *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir.

2015) ("We have previously interpreted the term 'place of public accommodation' to require 'some connection between the good or service complained of and an actual physical place.'"). Indeed, Plaintiff concedes this "nexus" requirement in his Complaint. (*See* DE 1 ¶ 80.)

Though the ADA may reach websites, it "does not require places of public accommodations to create full-service websites for disabled persons." *Bang & Olufsen,* 2017 WL 1957182, at *4. Instead, it merely requires that "if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store." *Id*.

### a. Plaintiff Does Not Plead Facts Showing an Impairment of His Access to Luby's Brick-and-Mortar Locations.

Plaintiff cannot prevail on his ADA claim because he fails to bring the Website within the ADA's reach. To state a claim under the ADA, a plaintiff must allege *facts*, not legal conclusions, showing how alleged "barriers" on a website actually impeded his use of the *physical place* of public accommodation. *See Access Now*, 227 F. Supp. 2d at 1321 (dismissing action when plaintiffs were "unable to demonstrate that Southwest's website impede[d] their access to *a specific, physical, concrete space* such as a particular airline ticket counter or travel agency.") (emphasis added). A rote recitation of barriers is insufficient on its own. *See Moncrief v. Cal. Dep of Corr.*, No. 12-414, 2013 WL 467984, at *3 (E.D. Cal. Aug. 20, 2013); *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011) (finding mere allegations a store "denied [the plaintiff] full and equal enjoyment' is precisely the 'formulaic recitation' of the elements of a claim that the Supreme Court has deemed insufficient under Rule 8.") (quoting *Iqbal*, 129 S. Ct. at 1949).

As an initial matter, Plaintiff's alleged accessibility barriers should be taken with a sizable grain of salt. As noted above, Plaintiff does not even bother to identify any accessibility barriers until *page twenty-three* of his Complaint. At Paragraphs 98 and 99, Plaintiff lists nine accessibility barriers (one is listed twice). (*See* DE 1 ¶¶ 98-99.) Plaintiff does not allege where on the Luby's

7

Website these barriers appear or even whether they impacted him in any manner. The reason for this is clear—Plaintiff did not encounter any such barriers. Plaintiff's counsel is in the habit of listing these nine exact barriers (*i.e.*, "image alternative text is not present" and "flash content is present") word-for-word in each of his complaints. *See, e.g.*, *Open Access For All v. Grubhub Holdings*, No. 17-cv-23117, DE 1 ¶¶ 101, 102 (S.D. Fla.); *Juan Carlos Gil v. Mulco Watches*, No. 17-cv-2295, DE 1 ¶¶ 80-81 (S.D. Fla.). It is flatly inconceivable that three different plaintiffs suing three different defendants over three different websites can, in good faith, allege the word-for-word identical barriers to access. Plaintiff's counsel in fact makes the same typo in each, alleging the same "barrier" twice. On this basis alone, this Court should deny Plaintiff's attempt to proceed on the basis of a purely rote recitation of barriers. *See Chapman*, 631 F.3d at 955 n.9.

Plaintiff's boilerplate pleadings aside, the Court need look no further than Judge Lenard's decision in *Gomez v. Bang & Olufsen Am., Inc.*—filed by Plaintiff here—to find that Plaintiff's ADA claim must fail. *See* 2017 WL 1957182. In *Bang & Olufsen*, Plaintiff filed a complaint eerily similar to the complaint before this Court, again, alleging the exact same accessibility barriers. *See* No. 16-cv-23801, DE 1 ¶¶ 82-83. There, Plaintiff alleged that Bang & Olufsen's website generally allowed consumers to search for merchandise, research pricing and installation services, and make appointments with sales representatives at physical locations, but that there were flaws in the website that "could hypothetically impede a blind person from enjoying all of the benefits of Bang & Olufsen's retail locations." *Bang & Olfusen*, 2017 WL 1957182 at *4. Evaluating these hypothetical impediments, Judge Lenard held:

> Plaintiff fails to allege any facts that Bang and Olufsen's website impeded his own personal enjoyment of the goods and services offered at its retail locations. His generalized grievances are wholly unconnected to any harm he actually suffered at the place of public accommodation (i.e. the concrete, physical store) and are therefore insufficient to survive a motion to dismiss.

*Bang & Olufsen*, 2017 WL 1957182, at *4.

The Court thus concluded that "[t]o survive a motion to dismiss, Plaintiff must claim an ***actual (not hypothetical) impediment*** to the use of Defendant's retail location." *Id.* (emphasis added). Put differently, Plaintiff must allege both (1) the *actual* barriers he encountered on a website and (2) how those barriers *actually* impeded his access to physical storefronts. *Id.*; *see also Chapman*, 631 F.3d at 955 (dismissing action where "Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability."); *Smith v. City of N.Y.*, No. 15-cv-4493, 2016 WL 4574924, at *8 (S.D.N.Y. Sept. 1, 2016) (finding a plaintiff who "include[d] no facts to demonstrate how she participated in services or received benefits differently because of her [disability], . . . failed to state a claim for discrimination under a theory of reasonable accommodation."); *Cotton v. Douglas Cnty. Dep't of Corr.*, No. 16-cv-153, 2016 WL 5816993, at *7 (D. Neb. Oct. 5, 2016) (finding a plaintiff failed to state a claim when the complaint included "no allegations concerning the nature of the benefits, services, programs or activities to which he was denied meaningful access.").

Relying on the exact same hypothetical access barriers he alleged in *Bang & Olufsen*, Plaintiff seeks to state a claim against Luby's here. He cannot. First, Plaintiff does not identify ***any*** barriers ***he*** faced on the Website. Plaintiff does not even allege to have faced any of the nine barriers identified in Paragraphs 98 and 99. Indeed, Plaintiff's allegations elsewhere are incoherent and intentionally vague:

9

> Defendant's Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms, and to browse through the online Fuddruckers menu for the purposes of purchasing Fuddruckers food to order and pay for food online for pick-up and delivery (see hyperlink http://www.fuddruckers.com/catering).

(DE 1 ¶ 35.) It is entirely unclear what "prompting information" means or how it constitutes a barrier. In any event, Plaintiff does not allege that *he* sought to order food online for pick-up and delivery. Such an allegation would be impossible. There are only five Fuddruckers locations in the country through which food can be ordered online for pick-up (and none allow online ordering for delivery). *See* https://order.fuddruckers.com/ (last visited August 17, 2017). None of the five locations are in Florida. *See id.* The link Plaintiff provides—the online catering link—is especially dubious as it does not allow for online ordering, pick-up or delivery at any location. *See* http://www.fuddruckers.com/catering (last visited August 17, 2017).

Plaintiff likewise fails to explain how the so-called barriers impeded his access to the brick-and-mortar restaurants. Plaintiff simply leaves the Court (and Luby's) to guess how "flash content is present" or "a link contains no text" had any impact on Plaintiff's use of the website. (*See* DE 1 ¶¶ 98, 99); *Bang & Olufsen*, 2017 WL 1957182, at *4 ("His generalized grievances are wholly unconnected to any harm he actually suffered at the place of public accommodation."). Plaintiff further does not allege that he (i) tried to access a physical location and could not, (ii) tried to order food and could not or even that he (iii) tried to locate a restaurant and could not, let alone that he was precluded from doing any of these things by the alleged barriers at issue. Though Plaintiff makes an offhand observation that one could join the "Fudds Club" online or order a gift card, (*see* DE 1 ¶¶ 26, 27), Plaintiff does not allege that he (i) wanted to or tried to join the Fudds Club but was unable or (ii) wanted to or tried to purchase a gift card but was unable.

In a bald effort to save himself from the holding in *Bang & Olufsen*, Plaintiff simply references a physical location in Hialeah, Florida (a *franchised* location) and hopes that will do the trick. (*See* DE 1 ¶ 31.) This allegation actually *proves* he was not hindered. Plaintiff contends he knew both the physical address of this location and the phone number, which he called to discuss the menu. (*Id.* ¶¶ 31, 32.) Fantastically, and tellingly, Plaintiff contends that the store representatives "failed to fully assist Plaintiff and referred Plaintiff to its Website." (*Id.* ¶ 32.) As an initial matter, Plaintiff fails to allege how they failed to assist him. And as a more substantive matter, he does not contend this is a fault of the Website. In any event, that Plaintiff (i) knows the address of the physical store, (ii) knows how to contact the physical store and (iii) was not inhibited from visiting the physical store should end this case. *See Gomez*, 2017 WL 1957182, at *4.

The problem here is evident: Plaintiff provides no facts as to how ***he*** was ***actually*** impeded from "the use of Defendant's retail location." *Bang & Olufsen*, 2017 WL 1957182, at *4. At best, Plaintiff alleges, conclusorily, that "[t]he fact that [he] could not communicate with Defendant left him excluded from accessing Fuddruckers' restaurant locations, and left [him] with the feeling of segregation, rejection, and isolation, as [he] was unable to participate in the same manner as provided to the public." (DE 1 ¶¶ 37, 38.) This is plainly insufficient. *Ashcroft*, 556 U.S. at 678. Plaintiff's Complaint should thus be dismissed with prejudice.

  **b. In The Alternative, Plaintiff's Claims Should Be Dismissed Pursuant to the Primary Jurisdiction Doctrine.**

If this Court determines that Plaintiff has stated a claim, it should nonetheless dismiss this action pursuant to the primary jurisdiction doctrine. The Eleventh Circuit teaches that, "[u]nder the primary jurisdiction doctrine, a court of competent jurisdiction may stay an action pending resolution of an issue that falls within the special competence of an administrative agency." *Beach TV Cable Co. v. Comcast of Florida/Georgia, LLC*, 808 F.3d 1284, 1288 (11th Cir. 2015). The

doctrine comes into play where the case "contain[s] some issue within the special competence of an administrative agency" and "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (internal quotations and citation omitted). In evaluating the primary jurisdiction doctrine, courts consider:

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371, 1376 (S.D. Fla. 2014). Courts will dismiss or stay an action "to take advantage of an agency's expertise, protect[] the integrity of the regulatory scheme, and promote[] uniformity." *Id.* Each of these factors is met here. Indeed, the DOJ already has the issue of website accessibility before it.

Judge Otero in the Central District of California recently evaluated this identical issue in a website accessibility matter against Dominos pizza, and determined that the primary jurisdiction doctrine required dismissal. *See Robles*, 2017 WL 1330216. There, the plaintiff alleged that the "website, Dominos.com, [did] not permit a user to complete purchases using a particular screen-reading software program." *Id.* at *1. After a lengthy analysis of the current state of ADA website compliance standards—or, more accurately, the lack thereof—Judge Otero explained that "Congress has vested the Attorney General with promulgating regulations clarifying how places of public accommodation must meet their statutory obligations of providing access to the public under the comprehensive ADA," and that "Congress has further provided that the DOJ's mandate with respect to Title III of the ADA is 'to issue implementing regulations, *see* 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title II in court, § 12188(b).'" *Id.* at *7 (quoting *Brandon*

12

*v. Abbott*, 524 U.S. 624, 646 (1998)). Judge Otero further noted that "[s]uch regulations and technical assistance are necessary for the Court to determine what obligations a regulated individual or institution must abide by in order to comply with Title III," which "require[d] both expertise and uniformity in administration . . . ." *Id.* As a result, he "call[ed] on Congress, the Attorney General, and the Department of Justice to take action to set minimum web accessibility standards" and dismissed each claim without prejudice. *Id.*

If the Court decides not to dismiss Plaintiff's ADA claim pursuant to Rule 12(b)(6), it should follow Judge Otero's lead in dismissing pursuant to the primary jurisdiction doctrine. Indeed, Plaintiff's complaint presents (1) an important issue (what standards apply to websites under the ADA), (2) that the DOJ is responsible for regulating, (3) pursuant to the ADA, (4) that "requires expertise [and] uniformity in administration." *Greenfield*, 18 F. Supp. 3d at 1376.

Plaintiff will likely note that Judge Scola recently held a bench trial and issued an injunction against Winn-Dixie in the context of an ADA accessibility case. *See Gil v. Winn-Dixie Stores, Inc.*, No. CV 16-23020-CIV, 2017 WL 2547242 (S.D. Fla. June 12, 2017). Judge Scola's Order, however, underscores why the primary jurisdiction doctrine should apply here. In *Winn-Dixie*, Judge Scola ordered Winn-Dixie to abide by the WCAG (Web Content Accessibility Guidelines), "produced by a consortium of private organizations whose goal is to make websites accessible for all." *Id.* at *2. The WCAG is a private accessibility standard neither recognized by or required by the DOJ. In other words, Judge Scola was forced to select his very own accessibility standard (of which there are many) to apply to Winn-Dixie. Judges around the country may reach different conclusions, favoring different private standards. Likewise, the WCAG itself has *three* different levels of compliance, each different. *See Robles*, 2017 WL 1330216, at *7 (C.D. Cal. Mar. 20, 2017) ("[T]he DOJ noted that 'the WCAG 2.0 contains 12 guidelines addressing Web

13

accessability' and requires that a 'Web page must satisfy the criteria for all 12 guidelines under one of three conformance levels: A, AA, or AAA,' which 'indicate a measure of accessibility and feasibility.'") (internal citation omitted).  Judge Scola, however, did not even instruct Winn-Dixie as to which conformance level to follow.  *See Winn-Dixie*, 2017 WL 2547242, at *9.  Even after this full bench trial, Winn-Dixie can abide by the Court's order and ***still be susceptible to suit*** simply because a given plaintiff prefers a conformance level other than what Winn-Dixie chose.

It is thus clear that if non-specialized courts decide to start imposing their own or other private standards, there will be no uniformity about how businesses should make their websites accessible and the DOJ will have to intervene with its own rulemaking anyway, which it is already in the process of doing.  Accordingly, dismissal on primary jurisdiction grounds is appropriate should the Court find Plaintiff sufficiently alleges his ADA claim.

## II.   PLAINTIFF'S OWN COMPLAINT PROVES THERE WAS NO TRESPASS.

Plaintiff's trespass claim fares no better than his failed ADA claim.  To state a claim for trespass to personal property, a plaintiff must allege that the defendant intentionally used, or interfered with, a chattel which was in his possession without justification. *Burshan v. National Union Fire Ins. Co of Pittsburgh, PA*, 805 So. 2d 835 (Fla. 4th DCA 2001); *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. Dist. Ct. App. 1998).  However, "[b]ecause Florida has previously held that trespass to chattels must involve movable personal property, the state does not recognize a cause of action for trespass to chattels in cyberspace." *Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 02-2695, 2005 WL 2179185, at *12 (W.D. Tenn. Sept. 6, 2005).

As an initial matter, the Court should decline to exercise supplemental jurisdiction over Plaintiff's common-law trespass claim.  Generally, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that

14

they form part of the same case or controversy." *Keys Wi-Fi, Inc. v. City of Key West*, 752 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012) (quoting 28 U.S.C. § 1367(a)). Nevertheless, a court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Plaintiff's ADA claim fails—the only claim for which the Court has original jurisdiction—it is appropriate for the Court to decline supplemental jurisdiction over his nominal (and nonsensical) state-law claim for trespass.

Nevertheless, Plaintiff[3] does not (and cannot) plead a claim for trespass to chattels. (*See* DE 1 ¶¶ 62-68, 107-15.) In fact, rather than establish any of the elements of a trespass claim, Plaintiff actually pleads himself *out* of a violation. Plaintiff alleges that Luby's installed software on his computer. (*See id.* ¶ 109.) However, in support of this contention Plaintiff points solely to Luby's privacy policy. As Plaintiff alleges, the privacy policy informs visitors that Luby's may collect information when they either sign up for or log into www.fuddruckers.com. (*Id.* ¶ 13.) According to Plaintiff, this results in certain software being placed on his computer. (*Id.* ¶¶ 107-15.) Notably, however, Plaintiff never alleges that he ever filled out any information or signed up for anything on Luby's Website (indeed, his allegations would imply that he could not). Luby's thus could not conceivably have collected Plaintiff's information. Even if Luby's had collected information though, the collection itself is by no means equivalent to the installation of software, let alone interference with chattel. *See Inventory Locator Serv*, 2005 WL 2179185, at *12 (finding that Florida does not recognize a claim of trespass to chattels in cyberspace). Plaintiff otherwise

---

[3] It is worth noting that "Plaintiff Juan Carlos Gil"—not Plaintiff Andres Gomez, in this matter—"re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-68" into the trespass claim. (DE 1 ¶ 107.) Plaintiff also states that the "Court is vested with the authority to grant Plaintiff Joel Price injunctive relief." (DE 1 ¶ 104.) These typographical errors are telling of the boilerplate nature of Plaintiff's counsel's filings. They are likewise not surprising, as Plaintiff's counsel has filed more than 400 ADA-accessibility cases since 2012.

15

declines to allege any facts supporting his contention that any software was ever installed on his computer by Luby's as a result of visiting the Website. Accordingly, Plaintiff's claim for trespass should likewise be dismissed.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court (i) dismiss Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), or (ii) in the alternative, dismiss Plaintiff's claims without prejudice pursuant to the primary jurisdiction doctrine and (iii) award all other relief deemed equitable and just.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Luby's respectfully requests oral argument on this motion. As detailed above, the motion raises novel and complex issues pertaining to the application of the ADA to websites. Oral argument will help this Court evaluate these novel and complex issues, as well as determine this motion as a necessary precursor to evaluating Luby's simultaneously filed Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

Luby's believes this hearing would last approximately one hour and could be held simultaneously with a hearing on Luby's simultaneously filed Rule 12(b)(2) motion to dismiss.

**DATED:** August 25, 2017	Respectfully submitted

/s/ Mark Schellhase

Courtney C. Booth, Esq. (*pro hac vice* to be filed)
cbooth@beneschlaw.com
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192

Mark Schellhase, Esq.
mark.schellhase@gray-robinson.com
**GRAY ROBINSON**
Mizner Park Office Tower
225 N.E. Mizner Blvd., Suite 500
Boca Raton, Florida 33432
Telephone:  (561) 368-3808
Fax:  (561) 368-4008

*Counsel for Luby's Fuddruckers Restaurants, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **LUBY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) WITH INCORPORATED MEMORANDUM OF LAW** was served upon all interested parties using this Court's ECF filing system this 25th day of August, 2017.

/s/ Mark Schellhase